## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EXELON GENERATION COMPANY, LLC | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | Case No. 1:18-cv-01224-RMC |
| | * | |
| BENJAMIN H. GRUMBLES, ET AL. | * | |
| | * | |
| *Defendants.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## DEFENDANTS' MOTION FOR RECONSIDERATION

Pursuant to Federal Rules of Civil Procedure 7(b) and 54(b), Defendants Benjamin H. Grumbles, Secretary of the Environment, State of Maryland, and D. Lee Currey, Director, Water and Science Administration, Maryland Department of the Environment (Maryland or MDE) move for reconsideration of the Court's March 29, 2019, Memorandum Opinion (Opinion or Op.) (Dkt. 28). In support of this Motion, Maryland states:

## ARGUMENT

## I.     THE COURT SHOULD RECONSIDER ITS REJECTION OF MARYLAND'S ARGUMENT THAT THIS CASE BELONGS IN STATE COURT

The Opinion rejects Maryland's assertion that this Court lacks subject matter jurisdiction. The Court's finding sets up a simultaneous, dual-track review of Maryland's certification, both before this Court and through the state process. This finding should be reconsidered because this structure is not consistent with either the Clean Water Act (CWA) or this Circuit's precedent interpreting it.

A core purpose of the CWA is to "recognize, preserve, and protect the primary responsibilities and rights of States to . . . plan the development and use . . . of land and water resources[.]" CWA § 101(b), 33 U.S.C. § 1251(b). Consistent with this purpose, CWA Section 401(a)(1), 33 U.S.C. § 1341(a)(1), puts states in charge of whether a water quality certification is issued, and specifies that a project cannot go forward without one.[1] States measure proposed projects against state-specific water quality standards, which may be more stringent than those imposed under federal law.[2] And, as the Opinion indicates (at 21), where a state certification has been issued, its terms will—absent further administrative or judicial review—be incorporated into whatever license is issued by the Federal Energy Regulatory Commission (FERC).

While finding that FERC lacks authority to reject a state certification on substantive grounds (Opinion at 14-15, *citing cases*), the Opinion concludes that this Court has that authority. The Opinion states that "the constitutionality of a Section 401 certification may be challenged in 'federal (or state) court[.]'" Opinion at 15, quoting *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 10 (D.C. Cir. 2011) (*Lake Carriers*). Respectfully, this finding misstates *Lake Carriers*. The case instead holds that when a regulated entity "believe[s] that the certification conditions imposed by any particular state pose an inordinate burden on their operations, they may challenge those conditions in that state's courts." *Id.* at 10. This holding is consistent with

---

[1] CWA Section 401(a)(1) provides in part: "Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate[.]" The provision goes on to state: "No license or permit shall be granted until the certification . . . has been obtained or has been waived[.]" *Id. Alcoa Power Generating, Inc. v. FERC*, 643 F.3d 963, 965 (D.C. Cir. 2011) ("A precondition of licensing is receipt of a State certification that any discharges into navigable waters will comply with sections 301-03 and 306-07 of the Clean Water Act, 33 U.S.C. §§ 1311-13, 1316-17.").

[2] CWA § 301(b)(1)(C); 33 U.S.C. 1311(b)(1)(C); *City of Tacoma v. FERC*, 460 F.3d 53, 67 (D.C. Cir. 2006); *Int'l Paper Co. v. Ouelette*, 479 U.S. 481, 499 (1987).

Circuit authority. A party seeking to challenge the conditions of a state Section 401 certification "must" do so through state process and in state court.[3] *City of Tacoma*, 460 F.3d at 67. The only exception is that FERC can hear a challenge to whether a certification complies with CWA Section 401's *procedural* requirements. *Alcoa*, 643 F.3d at 971 (FERC can determine whether State certification meets requirements "to be a 'certification required by [33 U.S.C. § 1341(a)(1)].'"). The panel in *Alcoa* explained: "At issue in *City of Tacoma* was whether the State of Washington had 'establish[ed] procedures for public notice' as required by Section 401(a)(1). This court vacated the license and remanded the matter to the Commission to determine whether the State had established and followed proper public notice procedures. 460 F.3d at 67."[4]

The language in *Lake Carriers* on which the Opinion relies addresses where a challenge to a *state law*— not a Section 401 water quality certification—can be brought.[5] *Lake Carriers* distinguishes between these fundamentally different types of challenges, addressing each separately. The court notes that its finding that state certification conditions may be challenged in

---

[3] *See also Keating v. FERC*, 927 F.2d 616, 622 (D.C. Cir. 1991) (disputes over state Section 401 certification conditions "are properly left to the states themselves").

[4] Similarly, CWA Section 401(a)(1) provides that if a state fails to "act on request for certification[] within a reasonable period of time (which shall not exceed one year) after receipt of such request[,]" then the state will be found to have waived its certification authority. FERC is empowered to make that determination. Indeed, Exelon recently asked FERC to declare that Maryland has waived its certification authority. Exelon Corp., Petition for Declaratory Order, *Conowingo Hydroelec. Project*, FERC Docket No. P-405-121 (Feb. 28, 2019), eLibrary No. 20190228-5371 (Exelon Petition). Exelon claims that because Maryland's certification is subject to the state appellate process, it is a "placeholder" and sufficiently "inchoate" that it does not meet the Section 401(a)(1) requirement that a state must "act" within a year. Exelon Petition at 23. As this Court knows, Exelon is singing a very different tune here, claiming that Maryland's Certification "imposes imminent deadlines" on Exelon, "many of which require advance study and planning to enable compliance[.]" Dkt. 17 at 21.

[5] The Opinion's characterization of the holding in *Lake Carriers* is consistent with Exelon's Opposition to Defendants' Motion to Dismiss. Dkt. 17 at 16-17. Maryland explained in its Reply to Exelon's opposition that its reading of *Lake Carriers* is erroneous. Dkt. 23 at 16.

state court is recognized universally. "'[T]he courts have consistently agreed . . . that the proper

forum to review the appropriateness of a state's certification is the state court.'" *Lake Carriers* at

10 (quoting *Roosevelt Campobello Int'l Park Comm'n v. EPA*, 684 F.2d 1041, 1056 (1st Cir.

1982)).[6] The court next addresses the available fora for challenges to "state law." When an entity

"believe[s] that a particular state's law imposes an unconstitutional burden on interstate

commerce, they may challenge that law in federal (or state) court." *Lake Carriers* at 10-11.[7]

    *Lake Carriers* appears to be the keystone of the Court's determination that it has subject

matter jurisdiction over this action. The Opinion cites no authority that a district court has

jurisdiction under 28 U.S.C. § 1331 to entertain a collateral attack on the conditions of a Section

401 water quality certification. The *Train* decision[8] (Opinion at 15), like *Lake Carriers*, indicated

---

[6] The Opinion finds (at 15) that the Complaint "clearly raises only questions concerning the federal Constitution and laws[.]" But Exelon is challenging the content of a state certification, and, its federal claims (whatever their validity) can be raised in the state proceeding. *See Prince George's Cty. v. Ray's Used Cars*, 398 Md. 632, 650-51 (2007) ("'Maryland…administrative agencies are fully competent to resolve issues of constitutionality.'") (citing *Montgomery Cty. v. Broad. Equities, Inc.,* 360 Md. 438, 451 n.8 (2000)); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."). Exelon has not claimed otherwise, nor has it cited—nor has the Opinion referenced—a single case in which a challenger to the substance of a state certification has been able to proceed simultaneously in state and federal district courts. The precedent here and elsewhere is to the contrary. As the Opinion itself cites (at 14-15), "'[F]ederal courts have uniformly held that FERC has no power to alter or review § 401 conditions, and that the proper forum for review of those conditions is state court.' *PUD No.1 of Jefferson Co. v. Wash. Dep't of Ecology*, 511 U.S. 700, 734 (1994) (Thomas, J., dissenting); *see also S.D. Warren Co. v. Maine Bd. of Envt'l. Prot.*, 547 U.S. 370, 384 n.8 (2006) ('FERC . . . may not review it.')."

[7] Directly following this statement, and underscoring that the reference in *Lake Carriers* to state law means state statutes or regulations, the court cites to a footnote in *American Trucking Ass'n v. EPA*, 600 F.3d 624, 628 n.1 (D.C. Cir. 2010), suggesting that a constitutional challenge could be brought against the state environmental regulation at issue in that case.

[8] *U.S. Steel Corp. v. Train*, 556 F.2d 822, 837 (7th Cir. 1977), *abandoned on other grounds by City of W. Chicago, Ill. v. U.S. Nuclear Regulatory Comm'n*, 701 F.2d 632 (7th Cir. 1983).

in *dicta* that federal constitutional challenges to state *statutes or regulations* may be brought in federal court, 556 F.2d at 837, but this case presents neither circumstance. *Delaware Riverkeeper*[9] (cited in the Opinion at 15) is inapposite and at odds with this Court's assertion of jurisdiction because Congress amended "the Natural Gas Act [to] provide[] [the Court of Appeals] with jurisdiction to review state authorizations issued pursuant to the Clean Water Act," 833 F.3d at 373, which included New Jersey's state water quality certification. Congress would not have had to amend the Natural Gas Act to "streamline the review of state decisions" under the CWA if district courts were already empowered to review in collateral proceedings "state agency interpretation of federal law [and] state action taken pursuant to federal law." *Id.* at 377; *see Islander E. Pipeline Co.*, *LLC*, 482 F.3d 79, 84 n.1 (2d Cir. 2006) ("Prior to the [Energy Policy Act's] amendment to section 19, an NGA applicant only had recourse to challenge a state's denial of a WQC via the state's own review procedures.").[10]

The Court's subject matter jurisdiction finding includes the determination that "the immediate Complaint clearly raises only questions concerning the federal Constitution and laws, is not designed to invent federal jurisdiction, and is not frivolous."[11] Opinion at 15. Maryland

---

[9] *Del. Riverkeeper Network v. Sec'y Pa. Dep't. of Envtl. Prot.*, 833 F.3d 360 (3d Cir. 2016).

[10] The Opinion also cites (at 15) *Keating* for the proposition that "a dispute about the application of § 401(a)(3) was 'no doubt . . . a matter of federal law[.]'" That case involved review by the court of appeals of FERC decision concerning a procedural issue—"FERC's authority to decide whether the state's purported revocation of its prior certification satisfied the terms of section 401(a)(3)." *Keating*, 927 F.3d at 622. That finding does not justify a review action in this court addressing the substance of Maryland's Section 401(a)(1) certification. The panel in *Keating* instead emphasized the extent of state authority over certification, noting that through CWA Section 401(a)(1), "Congress intended that the states would retain the power to block, for environmental reasons, local water projects that might otherwise win federal approval." *Id.*, citations omitted.

[11] The Opinion states (at 19) that "Maryland does not cite a Maryland statute that addresses the conditions it put into the Certification." The relevant Maryland statutes are found in Title 9, Subtitle 3 of the Environment Article, Annotated Code of Maryland. This subtitle

asks that this finding be reconsidered. Exelon's claims in this proceeding should not be viewed as a basis for federal jurisdiction.[12]

_Counts I and III_. Counts I and III of Exelon's Complaint allege that the Certification's nitrogen and phosphorous-related conditions are field and conflict preempted, respectively, because Maryland has "usurped" (Dkt. 1, ¶ 136) the authority of the Environmental Protection Agency (EPA) to allocate Total Maximum Daily Loads (TMDLs) for the Chesapeake Bay, and that the Maryland certification conditions stand as an "obstacle" (Dkt. 1, ¶ 152) to EPA's authority to do so. But these assertions do not establish subject matter jurisdiction in this Court because "TMDLs are not federally enforceable." _Bravos v. Green_, 306 F. Supp. 2d 48, 52 (D.D.C. 2004).[13] "A TMDL does not, by itself, prohibit any conduct or require any actions." _City of Arcadia v. EPA_, 265 F. Supp. 2d 1142, 1144 (N.D. Cal. 2003). They are "'informational tools.'" _Am. Farm Bureau Fed'n v. EPA_, 792 F.3d 281, 291 (3rd Cir. 2015) (quoting _Pronsolino v. Nastri_, 291 F.3d 1123, 1129 (9th Cir. 2002)). And as regards to EPA's limited ability to seek to enforce TMDLs indirectly, "EPA [has] repeated[ly] [assured the courts and stakeholders] that

---

consists of a broad grant of authority to "improve, conserve, and manage the quality of the waters of th[e] State." Md. Code Ann., Env't Section 9-302(b)(1). Section 9-314 directs MDE to set water quality standards for the waters of the State, while Section 9-319(a)(7) gives the Department the power "to adopt any other reasonable remedial measures to prevent, control, or abate pollution or undesirable changes in the quality of the waters of th[e] State." Maryland has set forth its water quality standards by regulation, in Title 26, Subtitle 08, Chapter 02 (Water Quality), which includes the authority to require an applicant for a federal permit or license to apply for and obtain, and comply with any conditions in, a water quality certification.  COMAR 26.08.02.10.

[12] Maryland recognizes that the Court has scheduled an oral argument to address the remaining portions of MDE's motion to dismiss, and that some (if not all) of the arguments presented here may also be addressed there.

[13] "Rather, to encourage compliance, the EPA may 'use federal grants to encourage the States to address nonpoint source pollution and accomplish the loading reductions established in a TMDL.' [Def's Op. at 11] (citing 33 U.S.C. § 1288(f))." _Id._

it will not undertake *any* enforcement action under the [Chesapeake] TMDL." *Id.* at 303 (emphasis added).

To the extent TMDLs become judicially "enforceable" in any sense, it is only through separate state actions that carry out the overall goals established in a specific TMDL. These actions would include, for example, incorporating discrete pollutant loads into (enforceable) National Pollution Discharge Elimination System (NPDES) permits.[14]   But Exelon is not here challenging Maryland's implementation plan, nor did Congress "intend[] federal courts to be the avenue by which parties may challenge *state* TMDL decisions." *Hayes Oyster Co. v. Or. Dep't of Env't. Quality*, No. 3:16-cv-02028 slip op. at 15 (D. Or.  Apr. 17, 2017) (dismissing complaint for lack of subject matter jurisdiction).

Congress has afforded the states Section 401 certification authority. Maryland's exercise of that authority has no bearing on EPA's allocations in a TMDL. And TMDLs aside, a state still has the certification authority afforded under CWA Section 401 to address the water quality impacts associated with a federally permitted activity. The proper measure as to whether the state has acted within the scope of its certification authority necessarily focuses on the specific water quality impacts associated with the activity in question, and whether the conditions included in a certification are reasonably necessary to meet state-specific water quality standards.

 Even assuming that Exelon's TMDL claims were justiciable, Exelon has framed them as challenges to state water quality standards. Exelon claims that "it is incorrect" that the Certification's "nitrogen- and phosphorous-related conditions imposed on Exelon are ***necessary*** to assure that Exelon will comply with Maryland water-quality standards." Dkt. 1, ¶ 132

---

[14] The United States EPA has delegated to MDE the authority to issue NPDES permits. United States EPA, *Maryland NPDES Permits*, https://www.epa.gov/npdes-permits/maryland-npdes-permits (last visited Apr. 12, 2019).

(original emphasis). That is a state law issue that Exelon can (and presumably will) pursue through the state review process. There is no basis for the notion that Congress' use of the word "necessary" in CWA Section 401(d) was intended to make a state's decision as to what was needed to meet state-specific standards a subject for simultaneous state and federal district court review. And Exelon's contention that federal law preempts "Maryland water-quality standards," *id.*, is an untenable reading of the statute. As noted earlier, states have authority under the CWA to adopt requirements that are *more stringent* than otherwise required by federal law or set by federal agencies. *City of Tacoma*, 460 F.3d at 67; *Int'l Paper Co.*, 479 U.S. at 499.

*Count II.*  Count II, Exelon's discharge claim, is a matter the Supreme Court has determined is properly addressed through the state administrative and judicial process. *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370 (2006).  The core of Exelon's claim is that Conowingo has not "'add[ed] … any pollutant to navigable waters.'" Dkt. 1, ¶ 143 (quoting 33 U.S.C. § 1362(12)). The Supreme Court has rejected this cramped interpretation of the CWA and the scope of state authority under Section 401. "[T]he Act does not stop at controlling the 'addition of pollutants,' but deals with 'pollution' generally, see § 1251(b), which Congress defined to mean 'the man-made or man-induced alteration of the chemical, physical, biological, and radiological integrity of water,' § 1362(19)." *S.D. Warren*, 547 U.S. at 385.

Inarguably the dam alters the integrity of the river, including through the steady build-up of sediment over the course of 90 years, so that it has now lost its prior sediment trapping capabilities.[15] Conowingo alters aquatic habitat in other ways, by impounding water, by altering the natural river flow, and by blocking upstream fish and eel passage, which in turn has devastated the freshwater mussel population upstream. Eels are a transport host species for the

---

[15] Dkt. 1, ¶ 117-18. Exelon concedes that the 2010 Bay TMDL did not model the effects of future changes in the dam's sediment trapping capabilities. Dkt. 1, ¶ 118.

mussels, and critical to supporting populations upstream of the dam. Dkt. 11-2 at 12. The substantial loss of the mussel population is directly related to the water quality nutrient issue because "[m]ussels … filter pollution out of waters." *Id.*

"Changes in the river like these fall within a State's legitimate legislative business, and the Clean Water Act provides for a system that respects the States' concerns." *S.D. Warren*, 547 U.S. at 386. Specifically, "Congress provided the States with power to enforce 'any other appropriate requirement of State law,' 33 U.S.C. § 1341(d), by imposing conditions on federal licenses for activities that may result in a discharge." *Id.* As even Exelon contends, there is a scientific dispute concerning the impacts of "scour" events, where large volumes of rainfall result in the release of pollutants from the sediment trapped by the dam. Dkt. 17 at 5.[16] There are a number of other scientific disputes between the State and Exelon concerning the dam's other impacts—including those associated with the loss of mussel populations and the attendant effects on the river system's overall resiliency—but these disputes all focus on how the dam complies with *state* water quality standards. These substantive disagreements, and Exelon's discharge claim, are inextricably tangled with state law and are not properly an independent basis for federal jurisdiction before this Court. *Lake Carriers* at 10; *City of Tacoma,* 460 F.3d at 67; *Alcoa*, 643 F.3d at 971; *Keating*, 927 F.2d at 622.

<u>*Counts IV, V and VI*</u>. Counts IV and V of the Complaint are flawed because Exelon has no property interest in a FERC hydro-license renewal application and thus cannot satisfy an essential element of either its takings or substantive due process claims. *Appalachian Power Co. v. U.S.*, 607 F.2d 935, 942 (Ct. Cl. 1979); *see also* Dkt. 23 at 21-24. Count VI is likewise

---

[16] Scour events differ from other discharges through the dam in terms of the volume and timing of pollution delivered downstream.

without merit. The Conowingo project is a private commercial enterprise[17] and not a federal governmental operation, and Maryland's express Congressional authority to regulate the project's water quality for purposes of federal licensing cannot be found to "obstruct [federal] governmental functions." *North Dakota v. United States*, 495 U.S. 423, 438. *See* Dkt. 23 at 24-25.

At bottom, Exelon is seeking to invent federal jurisdiction that does not exist. "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, purpose, its legislative history . . . and whether the claims can be afforded meaningful review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (internal citations omitted). That is the case here. Congress intended the states to be "the prime bulwark in the effort to abate water pollution." *Keating*, 927 F.2d at 622 (internal quotation omitted). "One of the primary mechanisms through which the states may assert the broad authority reserved to them is the certification requirement set out in section 401 of the Act." *Id.* Congress acted to preserve state authority to address water pollution, including, by means of expert state agencies. *S.D. Warren Co.*, 547 U.S. at 386 (quoting 116 Cong. Rec. 8984 (1970)). "Congress expressly intended to reserve to the states" the questions Exelon raises here—*i.e.*, "the validity of a state's decision to grant or deny a request for certification." *Keating*, 927 F.2d at 622. By channeling challenges to state certification conditions to state administrative and judicial processes, Congress established a process intended to result in a Section 401 certification appropriately tailored to meet state needs. Exelon's purpose here is contrary to Congressional intent, in that Exelon seeks to obviate the state certification process entirely by means of a federal court order compelling the withdrawal of the Maryland water quality certification. Should such relief be granted, Exelon

---

[17] Dkt. 1, ¶ 1.

would undoubtedly argue that the State had waived its Section 401 certification authority by having failed to act on Exelon's application within the one-year time period of Section 401(a).

Thus, unlike the state process, Exelon's collateral attack is not intended to result in a scientifically sound water quality certification addressing fish passage, subaquatic vegetation, nitrogen and phosphorous, and the host of other relevant issues. Exelon is not seeking an order from this Court directing MDE to revise the Certification, even assuming the court could issue one. Instead, Exelon asks for an order requiring withdrawal of the certification as a whole. Exelon's evident objective is to avoid state regulation in its entirety—a goal that is directly contrary to a core purpose of the Clean Water Act.

The D.C. Circuit has spoken to the respective federal and state authority to entertain challenges to state action under Section 401 of the CWA. Other than Section 401 procedural challenges that are the province of FERC and the courts of appeals on review, "challenge to a state certification issued pursuant to section 401, *must* [be] through state courts." *City of Tacoma*, 460 F.3d at 67 (emphasis added). If it were "[o]therwise, the state's power [over state water quality standards] would be meaningless." *Id.*[18]

---

[18] Neither the Opinion nor Exelon rely upon *District of Columbia v. Schramm*, 631 F.2d 854, 863 n.15 (D.C. Cir. 1980) and the court's *sua sponte* statement that it "belie[ved] [that it had] jurisdiction" under 28 U.S.C. § 1331 over a dispute concerning the issuance by a state of an NPDES permit—and not a CWA Section 401 water quality certification. That statement cannot be reconciled with the subsequent authority of this Circuit that substantive challenges to state Section 401 certifications must be brought in state court. Indeed, in directing the dismissal of plaintiff's purported CWA claims, *Schramm* itself holds that "Congressional silence on federal court review of state permits is consistent with the view that challengers to those permits should be relegated to state law remedies in state courts." *Schramm*, 631 F.2d at 863 n.15. Implicit in this determination is that Congress did not intend for the district courts to hear collateral Section 401 certification challenges. In any event, *Schramm* stands as a bar to Exelon's CWA claims for want of a statutory or equitable cause of action. Exelon is instead "relegated to state law remedies in state courts." *Id.* This is entirely consistent with Congress' having created in the Clean Water Act *one* cause of action enforceable by means of *Ex Parte Young*—a citizen's suit pursuant to 33 U.S.C. § 1365(a). Congress' action necessarily implies that no other such suits

## II.   THE COURT SHOULD RECONSIDER ITS DETERMINATION THAT VENUE IS PROPER IN THIS COURT

The Opinion finds that venue is proper in this district based upon 28 U.S.C. § 1391(b)(2). Maryland asks the Court to reconsider this finding because it is not supported by either the plain language of the venue statute or the facts of this case. Section 1391(b)(2) is written in the past tense—providing for suit to be brought in a judicial district "in which a substantial part of the events or omissions giving rise to a claim *occurred.*" *Id.* (emphasis added). The only judicial district in which a substantial part of the events or omissions giving rise to Exelon's claims have "occurred" is the District of Maryland. If FERC decides to issue a license, it will incorporate the Maryland certification—including whatever content is in place following the state review process. But the state appeal process remains underway and FERC has not yet acted. Thus, neither of those events has "occurred"; that they may happen in the future cannot form the basis for venue.[19]

There is no doubt as to which "event[]" has "occurred" to give rise to this lawsuit. "Exelon asks this Court to declare that the Certification's requirements exceed Maryland's authority under the Clean Water Act and violate the United States Constitution." Dkt. 1, ¶ 10.

_____

can be brought under the statute. *See Nat. Res. Def. Council v. Cal. Dep't. of Transp.*, 96 F.3d 420, 424 (9th Cir. 1996) ("When Congress enacted the Clean Water Act citizen suit provision, it specified that it was legislating to the extent permitted by the Eleventh Amendment . . . It would seem reasonable, then, that Congress implicitly intended to authorize citizens to bring *Ex parte Young* suits against state officials with the responsibility to comply with clean water standards and permits."); *Seminole Tribe v. Florida*, 517 U.S. 44, 75 n.17 (1996).

[19] The Opinion finds (at 20) that "the plain text of the statute as well as the statutory history clearly evidence Congress' recognition that a 'substantial part of the events giving rise to claim [can] occur[]' in multiple districts and a plaintiff is not obligated to choose the *best* venue." The quoted language as modified is not consistent with the statute, which is written in the past tense. *See also* Opinion at 20 & n.3 (referring to the Siegel "Commentary," which refers to districts A and B, where "substantial activities took place"); *see* The House Report of the Committee on the Judiciary (H.R. Rep. No. 101-734, at 23 (1990)) (stating in reference to the "substantial…events" clause that there is a "great advantage" in "referring to the place where things happened[.]").

As framed, Exelon's Complaint is a collateral challenge to State administrative action that occurred in Maryland, and which concerns the impact of a facility located in Maryland upon water quality within the State.

The Opinion finds instead that venue is proper in this Court because "the Certification is a 'final' decision by MDE and is the legally operative document *that will become* binding only because of further action by FERC in D.C." Opinion at 21 (emphasis added). Respectfully, Section 1391(b)(2) does not provide for venue in a judicial district based on future events that may impact a plaintiff. And establishing venue based on future events would be contrary to rules of statutory construction. Statutory language written in the past tense does not also encompass the future. "The Dictionary Act . . . ascribes significance to verb tense. It provides that, '[i]n determining the meaning of any Act of Congress unless the context indicates otherwise[,] … words used in the present tense include the future as well as the present.' 1 U.S.C. § 1." *Carr v. United States*, 560 U.S. 438, 448 (2010). "By implication, then, the Dictionary Act instructs that," *id.*, the past tense does not include the future.  The statutory language would have been different had Congress wanted to provide for venue in districts where events of significance would be "occurring."

Establishing venue based on future events would also be contrary to the purpose of Section 1391(b), which "protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant.'" *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (quoting *Jenkins Brick Co. v. Bremmer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)). "The court's *focus* must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Steen*, 770 F.3d at 703 (original

emphasis).[20] Here, as in *Steen*, all of the alleged wrongful conduct occurred in Maryland because that is where the purportedly unlawful certification conditions were promulgated. None of the identified contacts with the District of Columbia (Opinion at 18) constitute operative elements of Maryland's alleged wrongdoing. It is the content of the Certification conditions—not the filing of the Certification with FERC or its subsequent incorporation of the certification into a new license—that Exelon alleges violates federal law.

The Opinion's venue finding understandably rests upon surmise. The Opinion finds (at 21) that "[t]he crux of the issue is that none of the conditions in the Certification will come to bear until FERC incorporates the Certification's terms into the new license for the Conowingo Project." The Opinion then states "FERC has no discretion on that matter so inclusion of the Certification's terms as condition of the license is not a matter of speculation." *Id.* But the certification conditions may well be modified. They are pending on reconsideration before MDE, are then subject to hearing before an administrative law judge (independent of MDE), and thereafter subject to further review and potential revision, either upon review by the administrative law judge or following state judicial review (which could entail remand and additional modification). That is the state law process that Congress chose to respect in CWA Section 401,[21] and which should not be regarded as a nullity, such that "inclusion of the

---

[20] Although Baltimore is not far from Washington, D.C., that happenstance does not alter the scope and reach of Section 1391(b)(2). It remains the case that the statute cannot be read to provide venue where the effect of Maryland's actions may be felt by Exelon in the future.

[21] The Opinion finds (at 18) that "only FERC, *not* Maryland, can and will enforce the new terms of the Certification as part of the new license." (original emphasis). Yet Maryland can enforce the certification conditions both through the CWA itself, *Deschutes River All. v. Portland Gen. Elec. Co.*, 249 F. Supp. 3d 1182, 1191 (D. Or. 2018), and through state law. Md. Code Ann., Env't §§ 9-334-342 (authorizing MDE to enforce violations of any regulation adopted under Title 9, Subtitle 3, including COMAR 26.08.02.10E(2)(b)). In fact, Congress "intended states to take the lead in [certification] enforcement actions." *Deschutes River All.*, 249 F. Supp. 3d at 1192. Such enforcement actions will occur in Maryland, not D.C.

Certification's terms [as they stand today] as a condition of the license is not a matter of speculation." Opinion at 21. Indeed, and as noted above, Exelon itself has recently argued to FERC that the current Certification is "inchoate" and a mere "placeholder" because of the ongoing administrative process. *See supra* note 4. FERC has not included the Certification in the license, and Exelon has made no showing that it is likely to do so—especially where Exelon has requested that FERC refrain from doing so in light of the ongoing state process,[22] and has asked FERC to adjudicate whether in issuing the certification Maryland complied with the procedural requirements of Section 401. It is not possible to say today whether the Certification conditions that are the basis of Exelon's complaint will be "included in a new license granted by FERC in D.C." Opinion at 22. Indeed, in a filing submitted with FERC earlier today, Exelon asked the agency to continue to defer issuing a license for Conowingo because "there is a probability that Exelon's challenges to the April 2018 Document's conditions—in federal court, in state court, and before MDE—will alter or invalidate many of the conditions." Motion for Leave to Answer and Answer of Exelon Generation Company, LLC at 31, *Conowingo Hydroelec. Project*, FERC Docket No. P-405-121 (Apr. 12, 2019),.[23]

---

[22] Exelon has filed for state agency reconsideration of the water quality certification, notified FERC that it has done so, and requested that FERC defer action on the federal license pending resolution of Exelon's challenges to the Certification. Exelon Corp., Lodging of Filings Regarding Clean Water Act Section 401 Certification Challenges, *Conowingo Hydroelec. Project*, FERC Docket No. P-405-106 (May 25, 2018), eLibrary No. 20180525-5191 (Exhibit B to this filing is Exelon's Protective Petition for Reconsideration and Administrative Appeal, filed with the Maryland Department of the Environment).

[23] eLibrary No. 20190412-5150.

Maryland respectfully requests that the Court reconsider its ruling and find that venue is not proper here. Pursuant to 28 U.S.C. § 1406(a),[24] the Court should then either dismiss Exelon's Complaint or transfer this case to the Northern Division of the District of Maryland.

## CONCLUSION

For all of the aforementioned reasons, Maryland asks that this Court grant reconsideration and dismiss the Complaint.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Jonathan E.C. May
JONATHAN E.C. MAY
Assistant Attorney General
Maryland Department of the Environment
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland  21230
Tel. 410-537-3058
Fax 410-537-3943
jonathan.may@maryland.gov

Scott H. Strauss
Peter J. Hopkins
SPIEGEL MCDIARMID, LLP
1875 Eye Street, NW
Suite 700
Washington, DC 20006
Tel. 202-879-4000
Fax. 202-393-2866
scott.strauss@spiegelmcd.com
peter.hopkins@spiegelmcd.com

---

[24] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, the foregoing Defendants' Motion for Reconsideration was filed using CM/ECF system, which shall send notice to all counsel of record.

*/s/* Jonathan E.C. May

JONATHAN E.C. MAY